UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KATHLEEN MCFEETERS )
)
v. ) NO. 3-13-0467
) JUDGE CAMPBELL
NORTHWEST HOSPITAL, LLC, et al. )

MEMORANDUM

Pending before the Court are Motions to Dismiss filed by Defendant Northwest Hospital (Docket No. 55) and Defendant Community Health Systems, Inc. (Docket No. 57). For the reasons stated herein, Defendant Northwest Hospital's Motion to Dismiss is GRANTED in part and DENIED in part, and Defendant Community Health Systems' Motion to Dismiss is GRANTED.

FACTS

Plaintiff (also identified as "Relator"), a former employee of Northwest Hospital, brought this action pursuant to the False Claims Act ("FCA"), based upon alleged acts and omissions by Defendants Northwest Hospital and Community Health Systems, Inc. Plaintiff alleges that Defendant Northwest Hospital failed properly to document the number of minutes of outpatient therapy services provided to Medicare patients.[1] Plaintiff contends that this failure resulted in Defendants over-billing Medicare. Plaintiff also asserts that Defendant Northwest Hospital told its employees to retroactively document minutes on patients' charts which Plaintiff claims to violate the FCA. Plaintiff asserts that Defendant Community Health Systems ("CHS"), Northwest Hospital's parent company, knew of and directed this scheme to defraud Medicare. Plaintiff also alleges that she was fired in retaliation for her protected activity under the FCA.

---

[1] Plaintiff asserts that Medicare requires providers to keep accurate time records as a condition of payment.

Plaintiff alleges that she worked at Northwest Hospital from February of 2007 until January of 2011 as an occupational therapist. Plaintiff avers that in March of 2010, she was asked by her manager to review outpatient therapy charts to verify that they met Medicare documentation requirements. Plaintiff contends that she reviewed 30 to 50 patient charts and that the majority of those outpatient therapy charts did not contain the documented number of minutes required by Medicare. Plaintiff claims that her manager told her to add the minutes retroactively if the charts were missing them. Plaintiff refused to alter or modify the patient charts.

Plaintiff states that on April 1, 2010, the hospital conducted a training session for all outpatient therapists about Medicare billing procedures and how properly to document their time. The hospital also introduced a new outpatient therapy "Charge Sheet" with a specific place to put the number of minutes and units (15-minute increments) of each therapy procedure. Plaintiff asserts that managers instructed therapists (who had entered the number of units on the charts at the time of the therapy) retroactively to add the numbers of minutes to charts that did not include them and again Plaintiff refused to do so.

Plaintiff argues that she personally witnessed Defendants' failures properly to document the number of minutes for outpatient therapy sessions. She admits that she did not see the bills, but she contends that Defendants "likely" over-billed Medicare for these patients because they billed Medicare "blindly" for the number of units of outpatient therapy provided to Medicare beneficiaries at Northwest Hospital.

Defendant Northwest Hospital argues that Plaintiff's Amended Complaint fails to state a claim for which relief may be granted under the FCA because (1) Plaintiff fails to identify any claim

that was actually presented to the federal government, (2) Plaintiff fails to identify any claim that was false, and (3) Plaintiff fails to identify any claim that was knowingly false.

Defendant CHS argues that it is not the "alter ego" of Defendant Northwest Hospital and that it is not responsible for actions or inactions of Northwest Hospital. CHS also contends that Plaintiff has stated no factual allegations which would render CHS liable for any deceptive or fraudulent practice. Both Defendants deny that they retaliated against Plaintiff for any protected activity.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Complaints alleging False Claims Act violations must also comply with Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled with particularity. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011). Rule 9(b) requires that in alleging fraud, a party must state with particularity the circumstances constituting fraud. Malice, intent, knowledge and other conditions

3

of a person's mind may be alleged generally. *Id*. In complying with Rule 9(b), a relator, at a minimum, must allege the time, place and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud. *Id.* at 467.

## FALSE CLAIMS ACT

The FCA penalizes any person who knowingly presents or causes to be presented to an officer or employee of the U.S. government a false or fraudulent claim for payment or approval. *Chesbrough*, 655 F.3d at 466 (citing 31 U.S.C. § 3729(a)(1)). It also penalizes any person who knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government. *Id.* A private individual, known as a realtor, may bring a civil action for a violation of the FCA, also known as a *qui tam* action, on behalf of the government. 31 U.S.C. § 3730(b)(1). The relator must plead with sufficient particularity that the defendants knowingly presented to the United States government a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729; *United States ex rel. Dennis v. Health Management Associates, Inc.*, 2013 WL 146048 at * 11 (M.D. Tenn. Jan. 14, 2013).

## FALSE OR FRAUDULENT CLAIMS

Defendants argue that Plaintiff has failed adequately to plead that either Defendant knowingly presented or caused to be presented a false claim to the government for payment. Defendants also argue that Plaintiff has not identified any specific false record or statement made by either Defendant. Defendants contend that because Plaintiff has failed to identify any particular claim which was submitted to the government for payment, there is no way to know if that particular claim was false.

Plaintiff has not identified in the Amended Complaint a single specific claim which was submitted to Medicare for payment. Neither has she identified a single specific claim in which Defendants made a false statement. The mere allegation that Defendants did not document properly[2] does not prove that Defendants submitted false claims. The Plaintiff does not deny that the therapists themselves documented the number of units of therapy provided. She argues, however, that in some cases, the therapists failed to also document the exact number of minutes of therapy provided.

Put another way, Plaintiff may have identified conduct which allegedly violated a Medicare guideline (failure to document minutes of therapy), but she has not identified in the Amended Complaint a specific false claim of which she has personal knowledge which was in fact presented to the government. Because the false claim itself is a requirement of an FCA cause of action, it is not sufficient that the Amended Complaint alleges underlying fraudulent conduct with particularity; it must also allege the presentation of a false claim for payment to the government with the same particularity. *United States ex rel. Winkler v. BAE Systems, Inc.,* 957 F. Supp. 2d 856, 865 (E.D. Mich. 2013).

The Amended Complaint fails to specify which patients' claims were false; which of those patients whose claims were false were, in fact, Medicare patients; or which of those Medicare patients whose claims were false had claims actually submitted to the government for payment. Plaintiff has failed to plead additional details about the presentment of allegedly false claims, such as whether the therapists who selected the specific codes and number of units to bill for the services

---

[2] Plaintiff avers that Medicare requires therapists to include on Medicare claim forms both the number of units (15-minute time periods) of therapy provided and also to document the amount of minutes they spend performing procedures and/or modalities on Medicare patients.

5

provided false information; whether the number of units on any particular chart was incorrect; when the claims were actually submitted to the federal government; or what payment from the government was obtained as a result of such claims. At most, Plaintiff alleges personal knowledge of how therapy sessions were (or were not) documented, not how they were actually billed.

The allegations of the Amended Complaint require the Court (1) to assume that because of Defendants' failure to document the number of minutes on a patient's chart, the therapists lied about the number of units they placed on the patients' charts or the billing department misrepresented the number of units put on the charts by the therapists; (2) to assume that any charts upon which an incorrect number of units was recorded involved Medicare patients; and (3) to assume that Defendants presented claims for payment to the government for at least some of these non-identified patients. Yet, Rule 9(b) does not permit the Plaintiff to state claims based on the allegation and assumption that illegal payments must have been submitted, were likely submitted, or should have been submitted to the government. *Dennis*, 2013 WL 146048 at *14 (citing *United States ex rel. Clausen v. Laboratory Corp. of America*, *Inc*. 290 F.3d 1301, 1311 (11th Cir. 2002)).

A critical element of a FCA violation is the actual presentment of a false claim to the government for payment or approval. *Dennis* at *14. "The submission of a false claim for payment converts an improper financial relationship into an act of fraud upon the government and forms the basis of the cause of action." *Id*. The Sixth Circuit imposes a strict requirement that relators identify actual false claims. *Chesbrough*, 655 F.3d at 472. That is, the relator must, at the very least, specify the "who, what, when where, and how" of the alleged fraud. *Dennis* at * 15 (citing *Sanderson v. HCA - The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

6

Plaintiff argues that the Court should apply a more relaxed standard in this case. The Sixth Circuit has left open the possibility that a court may "relax" the requirements of Rule 9(b) in circumstances where a relator demonstrates that she cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that she cannot produce such allegations is not attributable to her own conduct. *Chesbrough*, 655 F.3d at 470. The requirement that a relator identify an actual false claim may be relaxed when, even though the relator is unable to produce an actual billing or invoice, he has pled facts which support a "strong inference" that a claim was submitted. *Id.* at 471. Such an inference may arise when the relator has personal knowledge that the fraudulent claims were submitted by Defendants for payment. *Id.*

Here, Plaintiff has not alleged facts in the Amended Complaint to warrant relaxation of Rule 9(b)'s strict requirement that relators identify actual false claims. Although she has shown that she has sufficient personal, first-hand knowledge[3] of Defendants' failure to document actual minutes on the patients' chart and Defendants' alleged instruction to retroactively document the charts[4], Plaintiff has not shown any involvement with Defendants' billing or claims submission processes.[5] She has pled no facts to indicate she personally knows that any therapist intentionally misrepresented the number of therapy units on a patient's chart or that any specific false claims were actually submitted by Defendants to the federal government. She simply has not alleged facts that support a "strong

---

[3] Plaintiff herself notes that she has personal knowledge of Defendants' *schemes*, not Defendants' false claims.

[4] The Court notes that Plaintiff has not alleged or shown that when minutes were retroactively added to the charts (by the therapists who had previously calculated the number of units on those charts), those numbers were *false*.

[5] Plaintiff has asserted that she "believes" the billing department would always bill for one hour (four units) for each therapy session, yet she has no personal knowledge or examples of such conduct.

7

inference" that false or fraudulent claims were actually submitted for payment to Medicare, especially where, as here, the therapists themselves entered the number of units to be billed onto the patients' charts. For the claims to be false, the therapists would have had to lie about the number of units of time they provided therapy. Plaintiff alleges improper conduct by Defendants, but she fails to identify even one "for example" specific claim.

The assumptions in the Amended Complaint do not support a "strong inference" of a fraudulent scheme and presentment of false claims to warrant application of a "relaxed" Rule 9(b) pleading standard. Although Plaintiff does not need to identify *every* false claim submitted for payment, she must identify with specificity "characteristic examples that are illustrative of the class of all claims covered by the fraudulent scheme." *Chesbrough*, 655 F.3d at 470 (quoting *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). The Amended Complaint does not meet this standard.

Plaintiff admits that, after she advised her manager of the lack of documentation and the meeting was held to train therapists on proper procedures, the hospital employees did begin properly to document patient charts. Perhaps the failure to document the exact minutes created an environment where false claims *could have been* made, but Plaintiff has not identified a single such false claim that was actually made. Accordingly, Defendants' Motions to Dismiss Plaintiff's claims for false or fraudulent claims is granted, and those claims are dismissed.

"REVERSE FALSE CLAIMS"

Plaintiff alleges that Defendants also violated federal law by not reporting or returning overpayments from the government resulting from the allegedly false claims. The Medicare and Medicaid program integrity provisions state that if a person has received an overpayment, that

8

person shall report and return the overpayment to the government and notify the government in writing of the reason for the overpayment. 42 U.S.C. § 1320a-7k(d). Moreover, the FCA provides that any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money to the government or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money to the government is liable to the United States. 31 U.S.C. § 3728(a)(1)(G).

This claim assumes the failure to repay *fraudulently-obtained* money. Because Plaintiff has not sufficiently alleged that the claims actually presented to the government were false, she has not shown that the monies received by Defendants were fraudulently obtained. Accordingly, Plaintiff's reverse false claims cause of action is dismissed.

STATUTE OF LIMITATIONS

Defendants contend that Plaintiff's claims concerning matters prior to May 16, 2007, are barred by the FCA's six-year statute of limitations. 31 U.S.C. § 3731(b). Because Plaintiff's FCA claims based upon fraudulent and false claims have been dismissed, this argument is moot.

RETALIATION

Finally, Plaintiff alleges that Defendants retaliated against her because she complained about the alleged misconduct concerning Medicare claims and because she refused to retroactively supplement her charts. Plaintiff contends that she complained about the alleged fraudulent claims not only to her supervisors at the hospital, but also to Defendant CHS' confidential hotline and to Medicare. She claims that thereafter, she was called derogatory names and had belittling statements made about her by both co-workers and superiors. She alleges that she was isolated by her peers and constantly overworked by management. She contends that her work space was robbed and her

9

apartment was broken into, both of which she believes to have been done in retaliation for her complaints about fraudulent activity. Finally, Plaintiff argues that she was given her first ever negative performance review and was placed on an "unpaid investigative suspension" and later terminated for "personal conduct."

The FCA, as amended in 2009 and 2010, prohibits discharging, demoting, suspending, threatening, harassing or in any other manner discriminating against an employee because of lawful acts done by the employee in furtherance of an action under the FCA or to stop a violation of the FCA. 31 U.S.C. § 3730(h)(1).[6] To state a claim for retaliation under the FCA, Plaintiff must plausibly allege that (1) she engaged in protected activity; (2) Defendants knew about that protected activity; and (3) Defendants discriminated against her as a result of her protected activity. *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 514 (6th Cir. 2000). Defendants contend that Plaintiff did not engage in any protected activity.

An employee engages in protected activity where she in good faith believes, and a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government. *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 801 (M.D. Tenn. 2010). "Protected activity" must relate to exposing fraud or involvement with a false claims disclosure. *Id*. A protected activity is defined as that activity that reasonably could lead to a viable FCA action. *Id*. at 802.

The Court finds that Plaintiff's refusal to modify patient charts and her reports to her superiors, to the CHS hotline, and to Medicare officials that Northwest Hospital was allegedly filing

---

[6] A civil action for retaliation under the FCA must be brought within three years after the date when the retaliation occurred. 31 U.S.C. § 3730(h)(3).

false claims with the federal government were protected activity. Both Plaintiff's refusal and Plaintiff's reports were related to exposing fraud and involved allegedly false claims. Plaintiff's reports reasonably could have led to a viable FCA action. Even though the Court has ultimately found Plaintiff's claims not to allege violations of the FCA, her activity in opposing the alleged fraud was protected activity.

In addition, Plaintiff has sufficiently alleged that Defendants were aware of her protected activity. Her Amended Complaint alleges that she not only reported Defendants' practices to Medicare, but she also notified the hospital CEO, Assistant CEO, and two of her supervisors in writing that she had reported their misconduct to Medicare. Docket No. 51, ¶¶ 74 and 101.

Defendants also contend that Plaintiff has failed to allege a causal connection between any protected activity and her firing. To show this causal connection, Plaintiff must allege that the retaliation was motivated at least in part by her engaging in protected activity. *McKenzie*, 219 F.3d at 518. Defendants argue that Plaintiff must allege more than simply a refusal to participate in fraudulent activities as the cause of her firing.

The Court finds that, for purposes of this Motion to Dismiss, Plaintiff has sufficiently alleged a causal connection between her protected activity and her firing. Plaintiff's Amended Complaint alleges not only that Plaintiff refused to participate in the allegedly fraudulent activities, but also that she complained to numerous superiors with the Defendant hospital, to the CHS hotline, and directly to Medicare. Plaintiff's Amended Complaint also alleges that, following her complaints, she received her first ever negative performance review, was harassed and intimidated by superiors and co-workers, was placed on suspension, and was fired. Plaintiff also alleged that her complaints

about this harassment were never addressed by Defendants. These allegations are sufficient to survive a motion to dismiss.

## DEFENDANT CHS

In addition to the arguments addressed above, Defendant CHS contends that Plaintiff has merely tied CHS with Northwest Hospital as "Defendants" herein and failed to allege any wrongdoing specifically by CHS. There are clearly factual issues concerning the relationship between Northwest Hospital and CHS, but the Court must accept the factual allegations of the Amended Complaint as true. Moreover, having dismissed Plaintiff's claims other than retaliation, the Court need not focus on the sufficiency of the allegations against CHS except with regard to Plaintiff's retaliation claim.

With regard to protected activity, Plaintiff alleges that one of the ways she complained about the alleged fraud was to notify CHS' confidential hotline. She alleges that after this complaint to the hotline, CHS asked the Assistant CEO of Northwest Hospital to investigate the fraud. Plaintiff also contends that, as a result of her complaint to the hotline, CHS sent an employee representative to the hospital to give a seminar on the proper billing and documentation of outpatient therapy for Medicare beneficiaries. Plaintiff has sufficiently alleged that CHS knew about her protected activity.

Plaintiff has failed plausibly to allege that CHS discriminated against her, however. Neither the investigation or the seminar is an adverse employment action. Moreover, Plaintiff does not claim to be an employee of CHS. Her allegations concerning harassment, intimidation, isolation and ultimately termination all have to do with Northwest Hospital and its employees. Plaintiff has not alleged facts to show any adverse employment actions taken by CHS against her. She admits that she was fired by Northwest Hospital. Docket No. 51, ¶ 6.

12

The only connections alleged which could possibly make CHS responsible for the actions of Northwest Hospital are Plaintiff's allegations that CHS owns Northwest Hospital; that the hospital functions, "upon information and belief," as the alter-ego of CHS; that CHS exercises dominion over the day-to-day business decisions of the hospital; and that any actions taken by the hospital are actions of CHS. Docket No. 51, ¶¶ 12-14. Plaintiff has not alleged facts to support these allegations. Simply referring to Northwest Hospital and CHS collectively does not make them the same entity. Indeed, Plaintiff herself admits that they are not, in fact, the same entity. Docket No. 51, ¶¶ 10-12.

Plaintiff's grouping of these two Defendants, with no differentiation as to the alleged misconduct, falls short of what is required for pleading a claim of retaliation. Accordingly, Plaintiff's claim of retaliation against Defendant CHS is dismissed.

## CONCLUSION

For all these reasons, Defendant Northwest Hospital's Motion to Dismiss (Docket No. 55) is GRANTED in part and DENIED in part. Plaintiff's claims for violations of the FCA are DISMISSED except for Plaintiff's retaliation claim.

Defendant CHS' Motion to Dismiss (Docket No. 57) is GRANTED, and all claims against Defendant CHS are DISMISSED.

IT IS SO ORDERED.

                                                                                                                                                                                     _____
                                                                                TODD J. CAMPBELL
                                                                                 UNITED STATES DISTRICT JUDGE